STATE OF NORTH CAROLINA v. FREDDIE LEE JONES

No. 131

(Filed 8 July 1981)

**1. Criminal Law § 106.2— circumstantial evidence—sufficiency to withstand motion for nonsuit**

When the State relies on circumstantial evidence to establish defendant's guilt, such evidence is not required to exclude every reasonable hypothesis except that of guilt to withstand a motion for nonsuit; rather, the evidence, whether direct, circumstantial, or both, is sufficient to withstand a motion to dismiss if there is evidence which tends to prove the fact in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction and not merely such as raises a suspicion or conjecture.

**2. Homicide § 4.4— intent to kill**

While a specific intent to kill is an essential element of first degree murder, it is also a necessary constituent of the elements of premeditation and deliberation, and proof of premeditation and deliberation thus is also proof of intent to kill.

**3. Homicide § 18— proof of premeditation and deliberation**

Some of the circumstances which give rise to an inference of premeditation and deliberation are ill will or previous difficulty between the parties, the want of provocation on the part of the deceased, the conduct of defendant before and after the killing and whether the killing was done in a brutal and vicious manner.

**4. Homicide § 21.5— premeditation and deliberation and intent to kill—sufficiency of evidence**

The State's evidence of premeditation and deliberation and intent to kill was sufficient to support defendant's conviction of first degree murder where it tended to show that defendant had threatened the victim's life on at least two occasions within a few days prior to the shooting of the victim and on one such occasion was armed with a pistol; immediately after the shooting defendant flagged down a prosecution witness to tell her he had just shot the victim; and the day after the shooting defendant told another prosecution witness that he, or rather the bullet, had killed the deceased over a money matter.

**5. Criminal Law § 113.9— misstatement of evidence—failure to object at trial**

Defendant waived his right to challenge the trial court's misstatement of evidence that defendant had been seen with a pistol while with deceased at her mother's home by failing to bring the misstatement to the judge's attention at trial; furthermore, defendant was not prejudiced by the misstatement where a witness testified that defendant was armed with a pistol when he threatened at a motel room to kill the deceased and where the trial judge told the members of the jury to use their own recollection of the evidence and not his summary in their deliberations.

ON appeal as a matter of right from the judgment of *Sitton, Judge,* entered at the 20 October 1980 Criminal Session of Superior Court, MECKLENBURG County, imposing a life sentence for conviction of first degree murder.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Elizabeth C. Bunting, for the State.*

*Wardlow, Knox, Knox, Robinson & Freeman, by H. Edward Knox and John S. Freeman, for the defendant.*

CARLTON, Justice.

I.

Defendant was charged in an indictment, proper in form, with the murder of Wanda Rene Davis. He entered a plea of not guilty and was tried by a jury.

At trial, evidence for the State tended to show that Wanda Rene Davis was shot and killed at approximately four o'clock on the afternoon of 5 June 1980 by a black male. The shooting took place in a parking lot behind McDonald's Cafeteria and the Mini-Pantry located at the intersection of LaSalle Street and Beatties Ford Road in Charlotte. Ms. Davis died as a result of a bullet wound to her chest which passed completely through her body. She was shot at a distance of two feet or more.

Shortly after the shooting Pearl Smith was driving down LaSalle Street near McDonald's Cafeteria when defendant flagged her down. She stopped her car and defendant told her he had just shot the deceased, who was known as "Shank" or "Shang," and added, "If you think I'm lying, go down there and look behind McDonald's. She's still laying down there on the ground." When defendant stopped Ms. Smith he was carrying "something like a clutch bag with a pistol in it." Ms. Smith described the pistol as black with a brown handle. After her discussion with defendant Ms. Smith drove to McDonald's Cafeteria and saw the deceased lying on the ground face down, bleeding from her mouth.

Herbert Walker was a little over a block away from the Mini-Pantry on the afternoon of 5 June 1980 when he heard a shot. He ran toward the back of the Mini-Pantry and saw a woman who he knew as "Shank" lying on the ground face down, bleeding from

the mouth. He went around to the front to call an ambulance and saw defendant in his car at the intersection of Beatties Ford and LaSalle waiting for the light to change.

Deceased's mother, Ann Davis, testified that her daughter was living with her at the time of her death. On the Monday before the shooting, 2 June 1980, Ms. Davis was awakened at approximately four o'clock in the morning by the sounds of an argument. She looked out her window and saw the defendant and Shank, her daughter, seated in a car in her driveway "cursing and fighting." Defendant had an object in his hand and every time the deceased tried to get out of the car defendant would "throw something up at her, and make her get back in the car." Although Ms. Davis could not hear the entire conversation, she did hear her daughter say "please don't kill, don't shoot me" when defendant made her get back in the car. This continued until Ms. Davis called to defendant that she was going to call the police. The deceased got out of the car and defendant left, yelling that he was going to kill Ms. Davis, Shank and Shank's baby.

Pearl Smith also testified that the deceased had stayed with her in her motel room one night four or five days before the shooting. On that night defendant knocked on the door of the motel room. The deceased, fearing that it was the defendant, hid under a bed. Ms. Smith opened the door and defendant asked if she knew where Shank was. He was armed with a pistol and said that he was going to kill Shank. The pistol was black with a brown handle. Ms. Smith forced him out of the room and called the police.

On the morning of 5 June 1980, Joe Johnson, a Charlotte police officer, saw defendant in McDonald's Cafeteria. Defendant was with a young black female and had a cast on his right hand. Officer Johnson, having gone to school with the defendant, asked how defendant hurt his hand. Defendant replied, "beating this bitch here," and that he was going to kill her next time.

On the day after the deceased was shot defendant talked to Maxine Harris at her home. She asked if he had killed Shank. He replied, "I didn't kill her, the bullet killed her." When asked why, defendant said that the deceased had had "somebody do something to him and he rounded back on her and did something to her" and that she "messed up some money that he was sup-

posed to get." According to Ms. Harris, the deceased worked for defendant as a prostitute.

The defendant presented no evidence.

The case was submitted to the jury and it found defendant guilty of first degree murder. From a sentence of life imprisonment[1] the defendant appeals of right to this Court pursuant to G.S. 7A-27.

## II.

[1] Defendant first assigns as error the trial court's denial of his motion for nonsuit. Defendant argues that the circumstantial evidence presented by the State was insufficient to go to the jury. He interprets our case law to require that when the State relies on circumstantial evidence to establish a defendant's guilt that evidence must not only be consistent with guilt but must also be inconsistent with every other reasonable hypothesis. Although this is the standard recited by some of the older cases, *e.g., State v. Harvey,* 228 N.C. 62, 44 S.E. 2d 472 (1947); *State v. Stiwinter,* 211 N.C. 278, 189 S.E. 868 (1937), it is no longer the yardstick by which the sufficiency of the evidence is measured.

The conflict in the authority was resolved by this Court in *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431 (1956). In *Stephens,* defendant raised a challenge to the evidence identical to that brought forth in this case: that circumstantial evidence failed to exclude every reasonable hypothesis of guilt and was insufficient to withstand defendant's nonsuit motion. The Court, per Justice Higgins, rejected the standard urged upon it by defendant and, thus, put an end to the controversy concerning the standard by which the sufficiency of circumstantial evidence is measured:

> We are advertent to the intimation in some of the decisions involving circumstantial evidence that to withstand a motion for nonsuit the circumstances must be inconsistent with innocence and must exclude every reasonable hypothesis except that of guilt. We think the correct rule is given in *S. v. Simmons,* 240 N.C. 780, 83 S.E. 2d 904, quoting

---

1. At the sentencing hearing the State presented no evidence of any aggravating circumstances. The trial judge found as a matter of law that no aggravating circumstances existed and imposed a sentence of life imprisonment.

from *S. v. Johnson,* 199 N.C. 429, 154 S.E. 730: "If there be any evidence tending to prove the fact in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury." The above is another way of saying there must be substantial evidence of all material elements of the offense to withstand the motion to dismiss. It is immaterial whether the substantial evidence is circumstantial or direct, or both. To hold that the court must grant a motion to dismiss unless, in the opinion of the court, the evidence excludes every reasonable hypothesis of innocence would in effect constitute the presiding judge the trier of facts. Substantial evidence of guilt is required before the court can send the case to the jury. Proof of guilt beyond a reasonable doubt is required before the jury can convict. What is substantial evidence is a question of law for the court. What that evidence proves or fails to prove is a question of fact for the jury.

*Id.* at 383-84, 93 S.E. 2d at 433-34. *Accord, State v. Daniels,* 300 N.C. 105, 265 S.E. 2d 217 (1980); *State v. Powell,* 299 N.C. 95, 261 S.E. 2d 114 (1980); *State v. Blizzard,* 280 N.C. 11, 184 S.E. 2d 851 (1971); *State v. Pinyatello,* 272 N.C. 312, 158 S.E. 2d 596 (1968); *State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741 (1967). The test of the sufficiency is the same whether the evidence is circumstantial or direct, or both: the evidence is sufficient to withstand a motion to dismiss and to take the case to the jury if there is "evidence [which tends] to prove the fact [or facts] in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture." *State v. Johnson,* 199 N.C. 429, 431, 154 S.E. 730, 731 (1930). If the evidence adduced at trial gives rise to a reasonable inference of guilt, it is for the members of the jury to decide whether the facts shown satisfy them beyond a reasonable doubt of defendant's guilt. *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967).

We believe this rule to be the same in substance as that announced by the United States Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979). In *Jackson,* the Supreme Court held that in challenges to state

criminal convictions brought under 28 U.S.C. § 2254 the relevant inquiry in determining the sufficiency of the evidence to support a finding of guilt beyond a reasonable doubt is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789, 61 L.Ed. 2d at 573 (emphasis in original). Although the rule established by the case law of this State employs different language, the basic rule is the same — in order to survive a motion for nonsuit there must be substantial evidence of all material elements of the offense. It is against this standard that defendant's claim of insufficient evidence must be judged.

[2] Defendant contends that the State's evidence was fatally deficient with regard to several elements of first degree murder: premeditation, deliberation and intent to kill. Premeditation is defined as thought beforehand for some length of time; deliberation means an intention to kill, executed by defendant in a "cool state of blood" in furtherance of a fixed design or to accomplish some unlawful purpose. *E.g., State v. Davis,* 289 N.C. 500, 223 S.E. 2d 296, *death sentence vacated,* 429 U.S. 809, 97 S.Ct. 47, 50 L.Ed. 2d 69 (1976); *State v. Perry,* 276 N.C. 339, 172 S.E. 2d 541 (1970). Specific intent to kill is an essential element of first degree murder, but it is also a necessary constituent of the elements of premeditation and deliberation. *State v. Baldwin,* 276 N.C. 690, 174 S.E. 2d 526 (1970). Thus, proof of premeditation and deliberation is also proof of intent to kill.

[3, 4] The elements of premeditation and deliberation are often not susceptible of direct proof and, in most cases, can be proved only by inference from circumstantial evidence. *E.g., State v. Cates,* 293 N.C. 462, 238 S.E. 2d 465 (1977). Some of the circumstances which give rise to an inference of premeditation and deliberation are ill will or previous difficulty between the parties, *State v. Fountain,* 282 N.C. 58, 191 S.E. 2d 674 (1972), the want of provocation on the part of the deceased, the conduct of defendant before and after the killing and whether the killing was done in a brutal and vicious manner, *State v. Bush,* 289 N.C. 159, 221 S.E. 2d 333, *death sentence vacated,* 429 U.S. 809, 97 S.Ct. 46, 50 L.Ed. 2d 69 (1976). In this case the State presented evidence that defendant had threatened the deceased's life on at least two occasions within a few days prior to the shooting. On both of those oc-

casions defendant stated that he intended to kill the deceased and, on one occasion, he was armed with a pistol. Immediately after the shooting defendant flagged down the prosecution witness Smith to tell her he had just shot the deceased. The day after the shooting defendant told State witness Harris that he, or, rather, the bullet, had killed the deceased over a money matter. This evidence is sufficient to give rise to an inference that, prior to the shooting, defendant, in a cool state of blood, thought about and informed an intent to kill and did kill Wanda Rene Davis in furtherance of an unlawful purpose. The circumstantial evidence of the elements of premeditation and deliberation and intent to kill was sufficient to enable a rational trier of fact to find these elements beyond a reasonable doubt, and the case was properly submitted to the jury. There was no error in the denial of defendant's nonsuit motions.

### III.

[5]   Defendant's second assignment relates to a misstatement by the trial judge in summarizing the State's evidence. In his charge to the jury, the trial judge stated "that the defendant had been seen with a pistol while with the said Wanda Davis at her mother's home." The decedent's mother did not testify that defendant was armed with a pistol but said only that defendant had something in his hand which she could not make out. Defendant contends that because the State's case relies so heavily upon prior threats this misstatement of the evidence constitutes prejudicial error for which he should be granted a new trial. However, defendant, by failing to bring the alleged misstatement to the judge's attention at trial, has waived his right to challenge the misstatement on appeal. *State v. Monk*, 291 N.C. 37, 229 S.E. 2d 163 (1976); *State v. McAllister*, 287 N.C. 178, 214 S.E. 2d 75 (1975). However, we note that even had defendant properly preserved his challenge for review, his challenge still would not succeed. On appeal the defendant has the burden of showing not only that there was error but also that the error was material and prejudicial. *E.g., State v. Jones*, 278 N.C. 259, 179 S.E. 2d 433 (1971). The misstatement here was of no substantial consequence. Another witness, Pearl Smith, testified that defendant was armed with a pistol when he knocked on the door of her motel room and threatened to kill the deceased. Additionally, the trial judge told the members of the jury to use their own recollection of the evi-

dence and not his summary in their deliberations. Under these circumstances, we conclude that the misstatement of the evidence by the trial judge did not operate materially to prejudice the rights of the defendant. *See State v. Davis*, 291 N.C. 1, 229 S.E. 2d 285 (1976). This assignment of error is overruled.

## IV.

Defendant's remaining assignment alleges error in the denial of his post-verdict motions and is based on the assignments of error discussed above. Because we have found no error in the submission of this case to the jury on the theory of first degree murder and that the jury instructions contained no prejudicial error, this assignment is without merit and must also fail.

## V.

We conclude that defendant had a fair trial, free from prejudicial error.

No error.